# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES JEROME BLACK and MARY ALICE BLACK, h/w, | CIVIL ACTION NO. 3:05-CV-1951 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| METSO PAPER USA, INC., SANDVIK, INC., PENNSYLVANIA EXTRUDED TUBE COMPANY, a joint venture formed as a partnership between SMI EXTRUDED TUBE, INC. and SANDVIK EXTRUDED TUBE, INC., | |
| Defendants. | |

## MEMORANDUM

Before me is Joint Motion for Final Approval of Class Action Settlement. (Doc. 122.) On January 23, 2009, I entered an order granting preliminary approval of the proposed settlement. (Doc. 114.) In August, 2009, I allowed an amendment to the Class Settlement Agreement extending the time for the Settling Defendants to opt out of the Agreement from 120 days to 210 days of the failure to reach an agreement to maintain and operate a water line had not been reached with a provider and government approvals obtained. (Doc. 117.) A fairness hearing was held on January 25, 2010. There were no objections to the settlement.

After hearing and review of the Class Settlement Agreement, I find the settlement embodied in the Class Settlement Agreement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2).

**DISCUSSION**

This case arises out of the discovery of ground water contaminated with trichloroethylene (TCE) and tetrachloroethylene (PCE) in the vicinity of the Ivy Industrial Park in Clark's Summit, Pennsylvania. Action was filed, and after a determination of Defendants' motions to dismiss, claims remained for response costs under Pennsylvania Hazardous Sites Cleanup Act (HSCA), 35 Pa. Stat. § 6020.101, et seq. and negligence. As a result of the discovery of the contamination, the Defendants installed carbon filters in some 230 homes which had test readings for one or more of the contaminants below the minimum for acceptable drinking water. In addition, testing was performed quarterly and filters replaced by Defendants where necessary to maintain acceptable levels. After four years (2005-2009), only a few new contaminated wells were discovered, so the area manifesting contamination, the flume, has proven to be stable. Testing was performed by the Pennsylvania Department of Health and the United States Department of Health and Human Services, and the conclusion of each agency was that there was no apparent public health hazard. As a result, there was no recommendation of a medical monitoring program or regimen. Ultimately, a determination was made to assure an absolute solution to any potential future problem of contamination by the installation of a water line which would service any of the properties in the "Affected Area", which is essentially the outerlimit within which any contaminant was discovered. Indeed, an agreement has been reached with Pennsylvania American Water Company, the water provider, to utilize one of its sources of water to service the line. The line will be constructed by the Defendants at a cost in excess of twenty million dollars. Moreover, under the terms of the Class Action Settlement Agreement, the Defendants bear the expense of the individual properties owned by class members hooking up to the line.

2

In addition to the foregoing, the proposed Settlement Agreement includes the following payments to those properties in the Affected Area that had a functioning well at any time since August 1, 2005:

| CATEGORY | SETTLEMENT PAYMENT |
|---|---|
| i) Any property partially or fully within the Affected Area at which TCE and/or PCE has ever been detected in its well water at concentration of 5 ppb or higher, | $16,000 plus 5% of most recent Tax Assessment Value as of 5/1/08 to the owner (or if multiple owners, collectively to all of the owners) and $100 to each non-owner person who has resided at the property for at least 365 days in total prior to installation of activated carbon filter systems on the water supply system at the property |
| ii) Any property partially or fully within the Affected Area at which TCE and/or PCE has ever been detected in its well water at concentration of 5 ppb or higher, | $8,000 plus 5% of most recent Tax Assessment Value as of 5/1/08 to the owner (or if multiple owners, collectively to all of the owners) and $100 to each non-owner person who has resided at the property for at least 365 days in total prior to installation of activated carbon filter systems on the water supply system at the property |
| iii) Any property partially or fully within the Affected Area which has never had a detection of TCE or PCE in its well water. | $4,000 plus 5% of most recent Tax Assessment Value as of 5/1/08 to the owner (or if multiple owners, collectively to all of the owners). |

It should also be noted that attorneys' fees will not come out of the foregoing payments but shall be in addition to any sums paid to the class members.

There are a total of 500 properties, the owners of which comprise the class.

*Gersh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) lists nine factors as to whether a class action settlement is fair, reasonable and adequate, namely 1) the complexity, expense and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage

of the proceedings and the amount of discovery completed; 4) the risk of establishing liability; 5) the risk of establishing damages; 6) the risk of maintaining the class action through trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and, 9) the range of reasonableness in light of all attendant risks of litigation. A consideration of the factors follows.

### 1) The Complexity, Expense and Likely Duration of the Litigation.

The complexity of the litigation is manifest. There are three defendants who have been targeted and who have undertaken remedial measures. The complexity of proving who discharged the contaminants, in what volume, and that it was through negligence is a daunting task. It would involve substantial expense and time in suit.

### 2) The Reaction of the Class to the Settlement.

The Class has reacted well to the settlement. There are no objections.

### 3) The Stage of the Proceedings and the Amount of Discovery Completed.

Suit was initiated in 2005. Discovery has not been extensive. However, there has been significant time spent on investigating the sources of the contaminants, the geographical extent of the contamination, and the Department of Environmental Protection files and findings. Motions to dismiss were decided in August, 2006, and no doubt summary judgment motions would have been filed.[1]

In March, 2008, serious settlement negotiations began, and settlement was reached in

---

[1] A summary judgment motion deadline was never established as Case Management Orders never got beyond dates regarding class certification. Settlement discussions ensued and a subsequent case management conference was not scheduled.

June, 2008. Moreover, further discovery would no doubt involve the difficult task of trying to ascertain who was responsible for what discharge, as well as who was responsible for what breadth of discharge and finally, was any or all of it due to negligent conduct.

### 4) The Risk of Establishing Liability.

Again, the task of having to determine the circumstances that lead to the discharge of the contaminants and whether it was the result of negligence, by whom, and when.

### 5) The Risk of Establishing Damages.

Given that this is a hazardous cleanup case, and recovery is limited to response costs, the remedies undertaken are clearly more than adequate to resolve the problem. Moreover, establishing damages otherwise involves proof of negligence, which, as previously noted, is no easy task, and proving an appropriate damage amount is difficult as well. Here, there is, according to the governmental agencies with the expertise, no apparent public health hazard. Further, there is no medical monitoring indicated, so personal injury damages are, at best, questionable. Proving property damages is likewise difficult, as the individual amounts of contamination vary and the effect is difficult to measure. Moreover, the water line proposed in settlement may well enhance property values for those in the Affected Area. (The line assures safety, eliminates other contaminants which can occur in wells, allows for fire hydrants and is unaffected by power outages.)

### 6) The Risk of Maintaining the Class Through Trial.

This is a non-factor.

**7) The Ability of Defendants to Withstand a Greater Judgment.**

While no evidence has been presented on this issue, I assume the Defendants could pay more than the sums to be paid to each of the three categories of class beneficiaries.

**8) The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery.**

I have discussed the differences inherent in establishing liability and damages beyond what the settlement proposes. Measuring it against what is proposed convinces me that the settlement is clearly within the range of reasonableness in light of the best possible recovery.

**9) The Range of Reasonableness in Light of all Attendant Risks of Litigation.**

I have discussed the difficulty of establishing liability as well as establishing damages. Measured against the settlement sums for essentially dimonition in property value (there is no proof of personal injury). I conclude that those sums are within the range of reasonableness given the noted attendant risks in litigating to conclusion. The addition of the installation of the water line assures that this settlement is within the range of reasonableness when measured against the risks of litigation.

## CONCLUSION

For the foregoing reasons, I find the Class Action Settlement Agreement, embodies a settlement that is fair, reasonable and adequate.

An appropriate Order follows.

Date: February 4, 2010   /s/ A. Richard Caputo
                         A. Richard Caputo
                         United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES JEROME BLACK and MARY ALICE BLACK, h/w, | CIVIL ACTION NO. 3:05-CV-1951 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| METSO PAPER USA, INC., SANDVIK, INC., PENNSYLVANIA EXTRUDED TUBE COMPANY, a joint venture formed as a partnership between SMI EXTRUDED TUBE, INC. and SANDVIK EXTRUDED TUBE, INC., | |
| Defendants. | |

## ORDER

**NOW**, this 4th day of February, 2010, **IT IS HEREBY ORDERED** that the settlement in the above captioned matter is approved, and the terms of the Settlement Agreement shall be executed in accordance with this Memorandum and Order and the Order granting preliminary approval of class action settlement dated January 23, 2009.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge